UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEVEN HIRSCH,

Plaintiff,

*v.*

FORUM DAILY INC.,

Defendant.

**REPORT AND RECOMMENDATION**
18-CV-6531-LDH-SJB

**BULSARA, United States Magistrate Judge:**

On November 15, 2018, Plaintiff Steven Hirsch ("Hirsch") commenced this action, alleging violations of section 501 of the Copyright Act, 17 U.S.C. § 501, and section 1202(b) of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C § 1202(b), by Defendant Forum Daily Inc. ("Forum Daily").  (Compl. dated Nov. 15, 2018 ("Compl."), Dkt. No. 1, ¶ 1).  Forum Daily failed to answer or otherwise respond to the Complaint.  On October 3, 2019, the Clerk of Court entered a default against Forum Daily.  (Certificate of Default dated Oct. 3, 2019 ("Certificate of Default"), Dkt. No. 11).  Hirsch filed this renewed motion for default judgment on August 3, 2020.  (Notice of Mot. ("Mot."), Dkt. No. 18).  The Honorable LaShann DeArcy Hall referred the motion to the undersigned on August 28, 2020.  (Order Referring Mot. dated Aug. 28, 2020).

For the reasons stated below, it is respectfully recommended that the motion for default judgment be granted in part and denied in part and damages be awarded as indicated.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Hirsch is a professional photographer with an office in New York City.  (Compl. ¶ 5).  He is "in the business of licensing his photographs to online and print media for a

fee." (*Id.*).  Hirsch took two photographs (the "Photographs") during the trial of Yoselyn

Ortega, a nanny who was convicted of murdering Lucia and Leo Krim, two young

children she cared for.  (*Id.* ¶¶ 7–8; Photographs, attached as Ex. A to Compl., Dkt. No.

1).  Hirsch subsequently licensed the Photographs to the *New York Post*.  (Compl. ¶ 8).

One Photograph (the "Ortega Photograph"), which depicts Ortega alone in the

courtroom, was published on February 4, 2018, in an article entitled "Upper West Side

'Killer Nanny' Headed to Trial."  (*Id.*; Emily Saul, *Upper West Side 'Killer Nanny'*

*Headed to Trial*, N.Y. Post (Feb. 4, 2018, 6:50 PM) (the "First Article"), attached as Ex.

B to Compl., Dkt. No. 1, at 2–3).  The article included a gutter credit identifying Hirsch

as the photographer.  (Compl. ¶¶ 8, 21; First Article at 1).  The other Photograph (the

"Krims Photograph") depicts Kevin and Marina Krim,[1] the victims' parents, leaving the

courtroom, and was published on March 13, 2018, in an article entitled "Father of Kids

Slain by 'Killer Nanny' Gives Heartbreaking Testimony."  (Compl. ¶ 8; Emily Saul,

*Father of Kids Slain by 'Killer Nanny' Gives Heartbreaking Testimony* (Mar. 13, 2018)

(the "Second Article"), attached as Ex. B to Compl., Dkt. No. 1, at 4–6).  Although the

Complaint alleges that this article includes a gutter credit, (Compl. ¶ 21), the copy of the

article attached to the Complaint does not, (Second Article at 1).

Forum Daily is a corporation organized in Florida and registered to do business

in New York.  (Compl. ¶ 6).  It operates a website, www.forumdaily.com, (*id.*), which

advertises itself as "[t]he main site of Russian-speaking America," *About Us*, Forum

Daily, https://www.forumdaily.com/en/contacts/ (last visited Feb. 4, 2021).  Hirsch

alleges that, "[o]n or about March 13, 2018," Forum Daily published an article that

---

[1] The Complaint misspells their names as "Kevin and Maria Kirm."  (Compl. ¶ 7).

included both Photographs.  (Compl. ¶ 11; *A Father of Children Killed by a Nanny in New York Gave a Blood-Chilling Testimony in Court* (Mar. 13, 2018, 18:30 EST) (the "*Forum Daily* Article"), attached as Ex. D to Compl., Dkt. No. 1).

Hirsch registered the Photographs with the U.S. Copyright Office (registration number VA 2-103-137), with an effective registration date of March 29, 2018. (Certificate of Registration ("Certificate of Registration"), attached as Ex. C to Compl., Dkt. No. 1).  Hirsch avers that he neither licensed the Photographs to Forum Daily nor gave permission or consent for Forum Daily to publish the Photographs.  (Compl. ¶ 12).

Hirsch commenced this action by filing a summons and Complaint on November 15, 2018.  (*Id.*).  The Complaint alleges copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501, and the removal of copyright management information in violation of the DMCA, 17 U.S.C. § 1202(b).  (*Id.* ¶¶ 14–27).

Forum Daily was served with a summons and Complaint on November 30, 2018 via service on the New York Secretary of State.  (Aff. of Service dated Dec. 4, 2018 ("Executed Summons"), Dkt. No. 6).  Forum Daily failed to respond, and at Hirsch's request, (Decl. of Counsel in Supp. of Pl.'s Req. for Entry of Default Pursuant to Fed. R. Civ. 55(a) dated Sept. 30, 2019, Dkt. No. 10), the Clerk of Court issued a certificate of default, (Certificate of Default).  On February 21, 2020, Hirsch moved for default judgment.  (Notice of Mot., Dkt. No. 12).  On July 24, 2020, this Court directed Hirsch to show cause why the motion should not be denied for failure to comply with Local Civil Rule 55.2.  (Order to Show Cause dated July 24, 2020, Dkt. No. 16).  In response, Hirsch filed a second, revised motion.  (Mot.).[2]  The motion and its supporting papers

---

[2] The first motion for default judgment was denied as moot.  (Order dated Aug. 31, 2020).

were served by mail on Forum Daily's last known business address.  (Certificate of Service dated Aug. 3, 2020 ("Default J. Service"), Dkt. No. 22).  The Honorable LaShann DeArcy Hall referred the motion to the undersigned on August 28, 2020.  (Order Referring Mot. dated Aug. 28, 2020).

In his renewed motion for default judgment, Hirsch seeks: (1) $60,000 in statutory damages for copyright infringement in violation of the Copyright Act; (2) $20,000 in statutory damages for removal of copyright management information in violation of the DMCA; (3) attorney's fees and costs; and (4) post-judgment interest pursuant to 28 U.S.C. § 1961.  (Mot.).

For the reasons stated below, the Court respectfully recommends that the motion be granted in part and denied in part.

DISCUSSION

I.    Entry of Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for a plaintiff to obtain a default judgment."  *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant.  *Id.* r. 55(b)(2).  The Clerk entered a default against Forum Daily on October 3, 2019.  (Certificate of Default).

The next question, before reaching liability or damages, is whether Forum Daily's conduct is sufficient to warrant entry of a default judgment.  In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).  "These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented."  *Id.*; *see, e.g.*, *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721, 2019 WL 312149, at *3 (E.D.N.Y. Jan. 3, 2019), *report and recommendation adopted*, 2019 WL 291145 (Jan. 23, 2019).

First, Forum Daily's failure to respond to the Complaint demonstrates its default was willful.  *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding the defendants' nonappearance and failure to respond "indicate willful conduct" and granting plaintiff default judgment against them).  Forum Daily had sufficient notice of the present litigation, as a copy of the summons and Complaint was served via the New York Secretary of State on November 30, 2018.  (Executed Summons).  Hirsch's filings also indicate that Forum Daily was aware of the litigation and had been in contact with him regarding a potential settlement.  (Mot. to Adjourn Conference dated July 11, 2019, Dkt. No. 8; Mot. to Adjourn Conference dated Aug. 21, 2019, Dkt. No. 9).  And the motion for default judgment and supporting papers were served via mail to Forum Daily's last known business address.  (Default J. Service).  Notwithstanding this notice and service, Forum Daily did not respond to the Complaint, did not appear, and has not in any way attempted to defend itself.

As to the second factor, Hirsch would be prejudiced if the motion for default judgment were denied because "[w]ithout the entry of a default judgment, [he] would be unable to recover for the claims adequately set forth in the Complaint." *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation); *Trs. of the Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Coop., Pension & Welfare Funds v. Lynnview Constr. Corp.*, No. 12-CV-5644, 2013 WL 4852312, at *7 (E.D.N.Y. Sept. 10, 2013) (adopting report and recommendation).

Third, the Court cannot conclude there is any meritorious defense to Hirsch's allegations because Forum Daily did not appear and no defense has been presented to the Court. *E.g.*, *United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012); *Indymac Bank*, 2007 WL 4468652, at *1.

All three factors weigh in favor of the entry of default judgment. The Court now turns to the liability imposed, damages, and other relief to be awarded.

## II.    Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B & M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (Mar. 29, 2016).

The court must then determine "whether the unchallenged facts constitute a legitimate cause of action." 10A Charles Alan Wright & Arthur R. Miller et al., *Federal*

*Practice and Procedure* § 2688.1 (4th ed. 2020) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." (footnote omitted)); *LaBarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation).

Hirsch seeks a default judgment on both claims in his Complaint, copyright infringement in violation of the Copyright Act and removal of copyright management information in violation of the DMCA. (Mot.). Each is addressed in turn.

A.    Copyright Infringement

The Copyright Act provides the owner of a copyright, among other things, the exclusive rights "(1) to reproduce the copyrighted work in copies[;] (2) to prepare derivative works based upon the copyrighted work; [and] (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending[.]" 17 U.S.C. § 106; *see also Sheldon v. Plot Com.*, No. 15-CV-5885, 2016 WL 5107072, at *11 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, 2016 WL 5107058 (Sept. 19, 2016). By implication, those who lack ownership in a copyright lack such rights and may be liable for infringement.

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying [by the defendant] of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Kennedy v. Medgen, Inc.*, No. 14-CV-5843, 2016 WL 6585812, at *3 (E.D.N.Y. Apr. 19, 2016) ("A *prima facie* case of copyright infringement

is established by showing ownership of a valid copyright and a violation of the exclusive right of use."), *report and recommendation adopted*, 2016 WL 6601450 (Nov. 5, 2016).

As to the first element, "the existence of a valid copyright can be established by the introduction into evidence of a Copyright Office certificate of registration. Such a certificate, if timely obtained, constitute(s) prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *Sheldon*, 2016 WL 5107072, at *11 (quoting *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980)). Although the presentation of a registration certificate "shifts the burden of proof to Defendants to show the invalidity of Plaintiffs['] copyrights," in the context of a default judgment a timely certificate is sufficient to establish validity. *Id.* at *11–12 (quoting *Prince Grp., Inc. v. MTS Prods.*, 967 F. Supp. 121, 124 (S.D.N.Y. 1997)); *see also, e.g.*, *CJ Prods. LLC v. Concord Toys Int'l Inc.*, No. 10-CV-5712, 2011 WL 178610, at *3 (E.D.N.Y. Jan. 19, 2011) ("Since defendants have not submitted . . . a scintilla of evidence to cast doubt on the validity of any of the subject copyrights, . . . the presumption of validity has certainly not been rebutted.").

Hirsch submitted the Certificate of Registration associated with the Photographs, which has an effective date of March 29, 2018, with his Complaint. (Certificate of Registration). The Certificate names Hirsch as the author of the Photographs and as the copyright claimant, (*see id.* at 2), and the Court concludes he has thus established ownership of the copyright for the Photographs,[3] *see, e.g.*, *Sheldon*, 2016 WL 5107072,

---

[3] Under the Copyright Act, "[i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Since publication occurred in February and March 2018, (Compl. ¶ 8), and the registration occurred in March 2018, (Certificate of Registration), the certificate of registration constitutes *prima facie* evidence of validity.

at *12 ("Sheldon has provided a Certificate of Registration demonstrating his ownership of the Photograph and providing *prima facie* evidence of the validity of the copyright.").

As to the second element, the infringement of original work, a plaintiff must allege a violation of the exclusive rights provided to a copyright owner under 17 U.S.C. § 106 and must make a minimal showing to establish the work is original. *Id.* at *11. Hirsch alleges Forum Daily reproduced and publicly displayed the Photographs on its website without a license or any other authorization. (Compl. ¶¶ 12, 14). This is enough to establish that Forum Daily violated his exclusive rights in the Photographs. *See, e.g.*, *Korzeniewski*, 2019 WL 312149, at *6 ("Korzeniewski alleges Sapa Pho, who did not own any rights to the Image, reproduced and displayed it, and that he did not consent to authorize, permit, or allow in any manner the use of the Image. This is enough to establish that Sapa Pho violated his exclusive rights in the Image."); *Reilly v. Plot Com.*, No. 15-CV-5118, 2016 WL 6837895, at *5 (S.D.N.Y. Oct. 31, 2016) ("The well-pleaded allegations of plaintiff's complaint demonstrate that . . . defendant infringed [his] copyright by producing and displaying an unauthorized copy of the Photograph on its website."), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 160884 (Nov. 21, 2016).

Hirsch has also established that the Photographs are original works. "The burden of proving originality is 'minimal[.]'" *Dermansky v. Tel. Media, LLC*, No. 19-CV-1149, 2020 WL 1233943, at *3 (E.D.N.Y. Mar. 13, 2020) (quoting *Sheldon*, 2016 WL 5107072, at *11). Originality "simply means a work independently created by its author, one not copied from pre-existing works, and a work that comes from the exercise of the creative powers of the author's mind[.]" *Sheldon*, 2016 WL 5107072, at *11 (quoting *Boisson v. Banian Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001)). Hirsch alleges that he is a professional

photographer and took the Photographs himself. (Compl. ¶¶ 5, 7). This is sufficient to establish originality. *See, e.g.*, *Dermansky*, 2020 WL 1233943, at *3 ("Plaintiff's complaint sufficiently alleges that the photograph at issue is a result of her own creative process, for Plaintiff alleges that she is a professional photographer who 'licens[es] her photographs to online and print media' and that she is the one who 'photographed a taxidermy animal.'" (alteration in original)); *Sheldon*, 2016 WL 5107072, at *12 ("The Photograph is the result of Sheldon's creative process, as he chose when to take the Photograph and the angle from which to capture the singer. Thus, Plot Commerce undeniably copied original elements of plaintiff's work, by using the exact photograph taken by Sheldon.").

In light of the foregoing, the Court finds that Hirsch has demonstrated Forum Daily's liability for copyright infringement under the Copyright Act for the Photographs.

B.    DMCA

Section 1202(b) of the DMCA provides that:

No person shall, without the authority of the copyright owner or the law—

> (1) intentionally remove or alter any copyright management information,

> (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or

> (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,

knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. 1202(b).  In other words, this section prohibits: (1) intentional removal or alteration of copyright management information ("CMI"); (2) distribution or importation of CMI, knowing it includes missing or altered information; and (3) distribution or public performance of works, knowing they contain missing or altered CMI.  *Mango v. Buzzfeed, Inc.*, 356 F. Supp. 3d 368, 376 (S.D.N.Y. 2019), *aff'd*, 970 F.3d 167 (2d Cir. 2020).  CMI includes, among other things,"[t]he name of, and other identifying information about, the author of a work," as well as "[t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright."  17 U.S.C. § 1202(c)(2)–(3).

Hirsch asserts that Forum Daily "intentionally and knowingly removed [CMI] identifying [him] as the photographer of the Photographs."  (Compl. ¶ 22).  The Court concludes that Hirsch is alleging a violation of section 1202(b)(1), or the intentional removal of CMI.  To properly do so, Hirsch must establish (1) "the existence of CMI on the [infringed work]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally."  *Cattoni v. Tibi, LLC*, 254 F. Supp. 3d 659, 664 (S.D.N.Y. 2017) (alteration in original) (quoting *BanxCorp. v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010)).

With respect to the Ortega Photograph, Hirsch alleges (1) the existence of a gutter credit when published in the *Post*, (Compl. ¶ 21); (2) that the credit was removed when published by Forum Daily, (*id.* ¶ 22); and (3) that the removal was "intentional[ ] and knowing[ ]," (*id.*).  The copy of the First Article, attached as an exhibit to the Complaint, shows a gutter credit with Hirsch's name below the Ortega Photograph.  (First Article at 1).  "A gutter credit, under these circumstances, comes within the definition of CMI because it identified Hirsch as the author of the Photo[graph] and 'was conveyed in

connection with' the Photo[graph]'s publication in the *New York Post* article." *Hirsch v. Sell It Soc., LLC*, No. 20-CV-153, 2020 WL 5898816, at *3 (S.D.N.Y. Oct. 5, 2020); *see also Mango*, 356 F. Supp. 3d at 377 ("[T]he Court agrees with the reasoning of other district courts that gutter credits constitute CMI under the [DMCA]."). And the copy of the *Forum Daily* Article, also attached to the Complaint, shows that this credit to Hirsch has been removed—below the Photograph, there is a credit only to the *Post*. (*Forum Daily* Article at 3). These allegations are sufficient to establish Forum Daily's liability under the DMCA with respect to the Ortega Photograph. *See, e.g.*, *Wexler v. Synergy Prep, Inc.*, No. 20-CV-2672, 2021 WL 260635, at *2 (E.D.N.Y. Jan. 3, 2021), *report and recommendation adopted*, 2021 WL 260101 (Jan. 26, 2021); *Hirsch v. Sell It Soc., LLC*, 2020 WL 5898816, at *3; *Dermansky*, 2020 WL 1233943, at *3–4.

With respect to the Krims Photograph, Hirsch makes the same allegations. (Compl. ¶¶ 21–22). However, the evidence submitted with the Complaint—namely, a copy of the Second Article—does not show any gutter credit to Hirsch. (Second Article at 1). Instead, the Photograph only includes a caption: "Kevin and Marina Krim leave court." (*Id.*).[4] Therefore Hirsch has failed to establish the existence of CMI on the Krims Photograph and, thus, has not established liability under the DMCA with respect to its publication by Forum Daily. *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 338 (S.D.N.Y. 2019) (granting summary judgment in favor of defendants on DMCA claim where there was no "evidence suggesting whether there was CMI on the Photographs when Defendants obtained them").

---

[4] The exhibit attached to the Complaint includes a PDF printout of the Second Article. (*Id.*). Hirsch's name is listed on the second page of the printout—presumably identifying the photograph of Yoselyn Ortega on the second page of the downloaded article. (*See id.*). Nowhere is Hirsch associated with the Krims Photograph. (*See id.*).

As a result, the Court finds that Hirsch has demonstrated Forum Daily's liability under the DMCA for the Ortega Photograph only.

III.    Damages, Interest, and Costs

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup,* 973 F.2d at 158. "[A]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quoting *Ann Taylor, Inc. v. Interstate Motor Carrier, Inc.*, No 03-CV-7502, 2004 WL 2029908, at *3 (S.D.N.Y. Sept. 13, 2004)), *report and recommendation adopted*, 2012 WL 1354481 (Apr. 13, 2012). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (adopting report and recommendation) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases).

A.    Damages Under the Copyright Act

Under the Copyright Act, once liability for infringement has been established, a plaintiff may elect either actual or statutory damages. 17 U.S.C. § 504(a); *Philpot v. Music Times LLC*, No. 16-CV-1277, 2017 WL 9538900, at *5 (S.D.N.Y. Mar. 29, 2017)

("Upon establishing a defendant's liability under this Section, a plaintiff may recover his actual damages caused by the infringement, as well as any additional profits made by the defendant.  Alternatively, the plaintiff may elect to recover statutory damages." (citation omitted)), *report and recommendation adopted*, 2017 WL 1906902 (May 9, 2017).  "Statutory damages are available 'without proof of [the] plaintiff's actual damages, and are useful in cases where proof of actual damages or profits is insufficient.'"  *Id.* (alteration in original) (quoting *EMI April Music Inc. v. 4MM Games, LLC*, No. 12-CV-2080, 2014 WL 325933, at *3 (S.D.N.Y. Jan. 13, 2014), *report and recommendation adopted*, 2014 WL 1383468 (Apr. 7, 2014)).

A plaintiff may recover statutory damages for copyright infringement where the copyright is registered after the infringement if "such registration is made within three months after the first publication of the work."  17 U.S.C. § 412(2).  The Photographs were first published in the *Post* on February 4, 2018, and March 13, 2018, (Compl. ¶ 8; Statement of Damages dated Aug. 3, 2020 ("Statement of Damages"), Dkt. No. 20, ¶ 4), and the effective date of their registration was March 29, 2018, (Certificate of Registration).  Because the copyright registration became effective within three months of the first publication, Hirsch is eligible for statutory damages.  *See, e.g.*, *Bass v. Diversity Inc. Media*, No. 19-CV-2261, 2020 WL 2765093, at *3 & n.2 (S.D.N.Y. May 28, 2020).

"The court has broad discretion, within statutory limits, in awarding statutory damages."  *Noble v. Crazetees.com*, No. 13-CV-5086, 2015 WL 5697780, at *6 (S.D.N.Y. Sept. 28, 2015) (adopting report and recommendation).  Generally, statutory damages can be awarded "in a sum of not less than $750 or more than $30,000 as the court considers just."  17 U.S.C. § 504(c)(1).  However, a court can award up to $150,000 if it

finds the copyright infringement to be willful. *Id.* § 504(c)(2). While "[s]tatutory damages need not be directly correlated to actual damages, . . . they ought to bear some relation to actual damages suffered." *Seelie v. Original Media Grp. LLC*, No. 19-CV-5643, 2020 WL 136659, at *3 (E.D.N.Y. Jan. 13, 2020) (quoting *Mantel v. Smash.com Inc.*, No. 19-CV-6113, 2019 WL 5257571, at *3 (W.D.N.Y. Oct. 17, 2019)). To that end, in determining a statutory damages award, courts evaluate:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). On default, a plaintiff is afforded "the benefit of the doubt in applying these factors." *Prokos v. Grossman*, No. 19-CV-4208, 2020 WL 729761, at *2 (E.D.N.Y. Feb. 13, 2020).

Hirsch seeks statutory damages of $30,000 per Photograph, for a total of $60,000. (Statement of Damages ¶ 1; Decl. of Richard Liebowitz dated Aug. 3, 2020 ("Liebowitz Decl."), Dkt. No. 19, ¶¶ 17–19). But aside from conclusory statements that Forum Daily "operates in the publishing industry and is therefore presumed to have knowledge of copyright law," (Liebowitz Decl. ¶ 19), and that Hirsch "seeks statutory damages as a deterrent to willful infringers," (*id.* ¶ 17), Hirsch does not address any of the relevant factors. Instead, he "respectfully declines to submit evidence of his actual losses in the form of licensing fee history," (*id.*), which suggests that his actual losses are *de minimus*, *Seelie*, 2020 WL 136659, at *4.

When courts have awarded "maximum or substantial statutory damages for violation of the Copyright Act," there is typically "additional evidence of willfulness and allegations of actual awareness on the part of the defendants of their infringing activity;

there is usually at least one cease-and-desist letter sent to the defendant, and, frequently, requests for injunctive relief." *Dermansky*, 2020 WL 1233943, at *5. Hirsch offers no such evidence, nor did he ever request injunctive relief.

Based on nearly identical, cursory presentations, District Courts in this Circuit have consistently awarded between $750 and $5,000 in statutory damages in cases involving this same plaintiff's counsel and on default judgment motions. *E.g.*, *Lowery v. Fire Talk LLC*, No. 19-CV-3737, 2020 WL 5441785, at *5 (E.D.N.Y. June 29, 2020) (recommending $750 for a single infringement), *report and recommendation adopted*, 2020 WL 5425768 (Sept. 10, 2020); *Verch v. Sea Breeze Syrups, Inc.*, No. 19-CV-5923, 2020 WL 7407939, at *4 (E.D.N.Y. Aug. 20, 2020) ($1,000 for a single infringement), *report and recommendation adopted*, 2020 WL 7402209 (Dec. 17, 2020); *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475, 2020 WL 4738242, at *4 (E.D.N.Y. Aug. 14, 2020) (same); *Dermansky*, 2020 WL 1233943, at *5–6 (same); *Hirsch v. Sell It Soc., LLC*, 2020 WL 5898816, at *5 ($5,000 for single infringement); *Bass*, 2020 WL 2765093, at *5 (same).

In light of the foregoing and the absence of any detailed presentation to justify a higher statutory damages award, the Court therefore respectfully recommends a total of $1,500 in damages ($750 for each Photograph) be awarded to Hirsch for the violations of the Copyright Act.

B.    <u>Damages Under the DMCA</u>

The DMCA provides that, for each violation of section 1202, a plaintiff "may elect to recover an award of statutory damages . . . in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3)(B). Plaintiffs may recover statutory damages under both the Copyright Act and DMCA because "each statute 'protect[s] different

16

interests.'" *Bass*, 2020 WL 2765093, at *5 (alteration in original) (quoting *Agence France Presse v. Morel*, No. 10-CV-2730, 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014)).  "In awarding statutory damages under the DMCA, courts 'consider [several] factors . . . , namely, the difficulty of proving actual damages, the circumstances of the violation, whether [d]efendants violated the DMCA intentionally or innocently, and deterrence.'" *Id.* (alterations in original) (quoting *Agence France Presse*, 2014 WL 3963124, at *10).

Hirsch seeks a statutory damage award of $10,000 per violation.  (Statement of Damages ¶ 2).  As this Court has concluded that there was only one violation of the DMCA—with respect to the Ortega Photograph—this would mean an award of $10,000.

Considering the circumstances enumerated above—that Hirsch has failed to provide evidence of actual damages, the willfulness of the violation, a cease-and-desist letter, or efforts to seek an injunction—the Court respectfully recommends a statutory damage award of $5,000 for violation of the DMCA.  *See, e.g.*, *Mango*, 356 F. Supp. 3d at 378 ($5,000 for single photograph); *Bass*, 2020 WL 2765093, at *5 (same); *Dermansky*, 2020 WL 1233943, at *6 (same); *Myeress v. Elite Travel Grp. USA*, No. 18-CV-340, 2018 WL 5961424, at *4 (S.D.N.Y. Nov. 14, 2018) (same).

C.    Attorney's Fees

Hirsch also seeks an award of attorney's fees pursuant to the Copyright Act. (Compl. at 6, ¶ 6).  The Copyright Act provides that, "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof."  17 U.S.C. § 505.  "[T]he court may also award a reasonable attorney's fee[.]"  *Id.*

"When determining whether to award attorney[']s fees [in copyright cases], district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." *Bryant*, 603 F.3d at 144. "The third factor—objective unreasonableness—should be given substantial weight." *Id.* "The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and necessity of the hours spent and rates charged." *Hirsch v. Sell It Soc., LLC*, 2020 WL 5898816, at *5.

When this action was filed, Hirsch was represented by attorney Richard Liebowitz ("Liebowitz"). (Compl. at 7). With his motion for default judgment, Hirsch seeks $2,550 in attorney's fees, based on seven hours of work completed by Liebowitz. (Liebowitz Decl. ¶¶ 22, 24). Liebowitz seeks reimbursement at a rate of $425 per hour. (*Id.* ¶ 23).

Liebowitz's conduct as an officer of the court is well documented, (Notice of Order dated July 27, 2020, Dkt. No. 17), and he was suspended from the bar of the Eastern District of New York subsequent to the filing of this default judgment motion, (Order dated Dec. 4, 2020). As a threshold matter, the Court concludes that Liebowitz is still entitled to an award of attorney's fees in this case. "[A]n attorney may recover legal fees for services rendered prior to suspension or disbarment 'so long as the misconduct involves does not relate to the representation for which fees are being sought.'" *Vitalone v. City of New York*, 395 F. Supp. 3d 316, 324–25 (S.D.N.Y. 2019) (quoting *Leontios v. Arzanipour*, 22 A.D.3d 272, 273 (1st Dep't 2005)); *see, e.g.*, *Wexler*, 2021 WL 260635, at *4–5 (granting Liebowitz fees for work performed prior to his suspension in the Eastern District). Liebowitz seeks legal fees for services rendered

between November 15, 2018, and February 21, 2019, before his 2020 suspension.  (*See* Liebowitz Decl. ¶ 24).  Because the Court has no reason to conclude that his suspension is related to his representation in this case, and because he seeks fees for services performed before his suspension, Liebowitz is entitled to a fee award here.

As a result, the Court turns to the appropriateness of the fees sought.  In assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by examining what a reasonable client would be willing to pay.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008).  To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed.  *Id.*  The next step is to determine the reasonableness of the hours expended by counsel.  *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*, No. 07-CV-669, 2008 WL 746490, at *4–5 (E.D.N.Y. Feb. 26, 2007), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 21770 (Mar. 19, 2008).  The number of hours spent on a lawsuit are considered unreasonable if they are "excessive, redundant, or otherwise unnecessary."  *See, e.g.*, *LaBarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (adopting report and recommendation) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).

As for the reasonableness of the proposed hourly rate, courts examine the experience and qualifications of counsel seeking the fee award.  "The prevailing rates for attorneys in the E.D.N.Y. are approximately $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates."  *Dermansky*, 2020 WL 1233943, at *7 (quoting *Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068, 2020 WL 473619, at *4 (E.D.N.Y. Jan. 29, 2020)).

19

Liebowitz seeks compensation at an hourly rate of $425 because he is the founder and managing partner of his firm and because of his expertise in copyright matters. (Liebowitz Decl. ¶ 23). He graduated from the Maurice A. Deale School of Law at Hofstra University in 2015. (*Id.*). Citing cases exclusively in the Southern District of New York, he avers that this rate is below average for partners. (*Id.* ¶ 24).

The Court finds a rate of $425 is unreasonable in light of "Liebowitz's relatively short time practicing and the lack of clarity around his actual expertise." *Dermansky*, 2020 WL 1233943, at *7. As a result, the Court recommends his hourly rate be reduced to $350 an hour. *E.g.*, *id.* (reducing Liebowitz's rate to $350); *Balhetchet*, 2020 WL 4738242, at *5 (same); *accord Farrington v. Sell It Soc., LLC*, No. 18-CV-11696, 2020 WL 7629453, at *4 (S.D.N.Y. Dec. 21, 2020) ("Although Mr. Liebowitz may be [a] 'partner' at his firm, he has only been practicing for about five years, the length of time for a mid-level associate.").

Turning next to the reasonableness of the time expended, Liebowitz states that he performed seven hours of work on this case. (Liebowitz Decl. ¶ 24). The Court finds this range of hours is unreasonable considering the relative simplicity of the action and that the submissions are nearly identical to those in other cases, which he was able to litigate in less time. *E.g.*, *Wexler*, 2021 WL 260635, at *4-5 (finding 1.7 hours reasonable); *Farrington*, 2020 WL 7629453, at *4 (finding one hour reasonable). As a result, the Court recommends that the compensable time be reduced to five hours. *See, e.g.*, *Hirsch v. Sell It Soc., LLC*, 2020 WL 5898816, at *5 (finding 4.5 hours reasonable for identical action).

Therefore, the Court respectfully recommends that Hirsch be awarded $1,750 in attorney's fees, which consists of five hours compensated at an hourly rate of $350.

D.   Costs

Hirsch seeks reimbursement for costs consisting of $400 in court filing fees and $40 in service of process fees.  (Liebowitz Decl. ¶ 24).  Under Rule 54(d)(1) of the Federal Rules of Civil Procedure, a prevailing party is entitled to recover certain taxable costs.  These include filing fees, 28 U.S.C. § 1920(1), and reasonable service of process fees, *Master Grp. Glob. Co. v. Toner.Com Inc.*, No. 19-CV-6648, 2020 WL 5260581, at *15 (E.D.N.Y. Aug. 10, 2020), *report and recommendation adopted*, 2020 WL 5259057 (Sept. 3, 2020).

Filing fees are recoverable without supporting documentation if verified by the docket.  *E.g.*, *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (adopting a report and recommendation in part); *Philpot*, 2017 WL 9538900, at *11 (stating that the filing fee is "a fact of which the Court can take judicial notice").  The docket indicates the $400 filing fee was paid.  (Dkt. No. 1).  Therefore, although Hirsch did not submit a receipt, the filing fee is reimbursable.

Process server fees are also recoverable, but they must be supported by documentation.  *See Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997, 2017 WL 5033650, at *29 (E.D.N.Y. Sept. 22, 2017) (recommending that the plaintiffs not be awarded process server fees absent supporting documentation and noting that "failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery"), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 174714 (Oct. 18, 2017); *Sheldon*, 2016 WL 5107072, at *20 (recommending the costs for serving defendant "be denied due to lack of adequate documentation").  The Executed Summons indicates that the fee for service was $40.  (Executed Summons).  This is sufficient for Hirsch to recover process server fees.  *See, e.g.*, *Trs. of the Pavers & Road Builders Dist.*

*Council Welfare, Pension, Annuity & Apprenticeship & Skill Improvement & Safety Funds v. Kel-Tech Constr. Inc.*, No. 19-CV-2487, 2020 WL 6051097, at *10 (E.D.N.Y. Aug. 25, 2020), *report and recommendation adopted*, Order (Oct. 13, 2020).

Therefore, the Court respectfully recommends an award of $440 in costs.

E.   Post-Judgment Interest

Hirsch seeks an award of post-judgment interest at the statutory rate.  The Second Circuit has recognized that "[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (quoting 28 U.S.C. § 1961(a)).  "The post-judgment interest rate . . . is tied 'to the weekly average 1-year constant maturity Treasury yield . . . for the week preceding the date of judgment.'" *Genworth Life & Health Ins. Co. v. Beverly*, 547 F. Supp. 2d 186, 190 (N.D.N.Y. 2008) (alteration in original) (quoting 28 U.S.C. § 1961(a)). The Court therefore respectfully recommends post-judgment interest be granted on the total award, at the rate set forth in 28 U.S.C. § 1961, calculated from the date on which the Clerk of Court enters final judgment until the date of payment.

CONCLUSION

For the reasons stated, it is respectfully recommended that Hirsch's motion for a default judgment be granted in part and that judgment be entered against Forum Daily as follows:

- $1,500 in statutory damages for violations of the Copyright Act;

- $5,000 in statutory damages for violation of the DMCA;

- $1,750 in attorney's fees;

- $440 in costs; and

- Post-judgment interest in an amount to be calculated by the Clerk of Court pursuant to 28 U.S.C. § 1961(a).

That is, the Court recommends a total award of $8,690, plus post-judgment interest accruing at the statutory rate.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.").

Hirsch is directed to serve a copy of this Report and Recommendation on Forum Daily and file proof of such service on the record by February 16, 2021. Because Liebowitz is not permitted to make such a filing, attorney James H. Freeman, (Notice of Appearance dated Dec. 25, 2020, Dkt. No. 23), shall file the proof of service on ECF.

SO ORDERED.

*/s/ Sanket J. Bulsara* February 9, 2021
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York